### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DAVID H. KINNARD et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **CIV-07-250-R** |
| | ) | |
| **ROBERT L. STONE a/k/a ROBERT** | ) | |
| **L. STONE II; CYNTHIA A. STONE;** | ) | |
| **and ROBERT L. STONE, M.D.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court conducted a non-jury trial of this matter from June 17, 2008 until June 20, 2008. Following the conclusion of the trial, the parties submitted proposed findings of fact and conclusions of law. Having considered the evidence presented, the Court makes the following findings and conclusions.

The Court notes at the outset the general lack of credibility of all the parties to this action. The facts as found by the Court represent the Court's interpretation of the likely facts as separated from the obvious fiction presented by many of the witnesses. Additionally, the record keeping of both Plaintiffs and Defendants was severely deficient and renders it a near impossibility for even the experts to discern the actual history of transactions between the parties. The fault, however, lies with all parties. Any party who concludes that the Court clearly favored the opposing side would be incorrect. This is a tale of apparently intelligent people who have little business sense or common sense.

The parties' dealings began many years ago, when Plaintiff Roger Kinnard and Defendant Robert L. Stone became friends while attending the University of Chicago. Robert L. Stone and Cynthia Stone are now husband and wife; however, Cynthia Stone was

formerly married to Roger Kinnard. During the 1980's, Roger Kinnard, his brother, David Kinnard, and Robert L. Stone, initiated a number of business ventures for purposes of buying and running apartment buildings in Oklahoma. The ventures were known collectively, and managed loosely, as the Oklahoma Investment Group. The Oklahoma Investment Group functioned as a common management structure, or aggregator, for a number of entities, including: Cinnamon Creek, LLC, incorporated in 1999[1]; Peppertree Partners, Ltd[2]., formed in 1992; Windrock Associates, an Oklahoma general partnership formed in 1989[3], Summer Pointe Partners, Ltd., founded in 1991[4]; and Springfield Village Apartments, Ltd., an Oklahoma limited liability company, incorporated in 1990.[5] These entities did not maintain separate bank accounts. Rather, a single account in the name of Oklahoma Investment Group, which had virtually no assets, was used for both receiving monies and making payments. Within this single account, separate balance sheets were maintained for each entity. Each entity filed its own tax returns. Mark Reinitz served as manager of Oklahoma Investment Group, which was run by David Kinnard. During the relevant time period Roger Kinnard was living in Boston and Robert L. Stone and Cynthia Stone were living in Chicago.

_____

[1] Robert L. Stone, David Kinnard and Roger Kinnard each owned one-third of Cinnamon Creek, LLC.

[2] David Kinnard, Roger Kinnard, Robert L. Stone, and a fourth person each owned 24.75% of the partnership. The remaining one percent was owned by the general partner, Peppertree Partners, Inc, a corporation with four shareholders, the limited partners.

[3] David Kinnard, Roger Kinnard, and Robert L. Stone were equal partners, each owning one-third of the Windrock Associates.

[4] Summer Pointe Partners' general partner was Summer Pointe Partners, Inc., owned by Cynthia Stone, Roger Kinnard, Margaret McLaughlin and Samuel Brown. The limited partners were David Kinnard, Roger Kinnard, Sam Brown, Margaret McLaughlin, and Cynthia Stone.

[5] David Kinnard, Roger Kinnard, and Robert L. Stone, were equal members of Springfield Holding Company, LLC, which owns ninety-nine percent of Springfield Village Apartments, Ltd.. The remaining one percent is owned by Springfield Apartments, Incorporated, which had three shareholders, Roger Kinnard, David Kinnard and Robert L. Stone.

Mark Reinitz and David Kinnard were living in Oklahoma, although David Kinnard spent considerable time out of the country.

Problems began with regard to the entities when Robert L. Stone and Cynthia Stone relocated to Chicago in 1996.  David Kinnard agreed that for a period of five years, Robert L. Stone would receive monthly "allowance payments.[6]"  These payments were designed to assist the relocation of Robert L. Stone and his family from Oklahoma to Chicago.  The payments were not treated as "guaranteed payments" for tax purposes, but rather as advances on distributive share, and thus did not appear on the various Schedule K-1s produced by the entities.  From 1996 through 1998, and again from March 2000 through early 2005, monthly payments were made by Oklahoma Investment Group on behalf of the partnership entities to the Stones.  No payments were made during 1999, and apparently Robert L. Stone did not object to the absence of payments.  The rationale for the failure to make payments in 1999 is of course hotly contested.  David Kinnard testified that no payments were made because Robert L. Stone was not requesting money, apparently having made a considerable amount of money in a "side deal," that becomes a part of the tangled web presented in this action.  According to Robert L. Stone, the failure to make payments was an effort to extract a settlement with regard to this "side deal," a situation that the parties referred to as "the Beatrice Dispute."

---

[6] Actually the payments were to be made by Oklahoma Investment Group, which had no assets, but was the only entity with a bank account.  Apparently the draws were debited against Stone's distributive share of the various entities, and any excess created an account receivable in favor of Springfield Village.  Curiously there was no testimony regarding the accounting methodology employed with regard to the payments.  Additionally, it is unclear what the Stone's believed was their obligation vis-a-vis the Internal Revenue Service with regard to the payments, although it was made clear to Mr. Stone by the Oklahoma Investment Group accountant that the payments were not being deducted as expenses by the entities.

Upon relocating to Chicago in 1996, Robert L. Stone sought to acquire a refrigerated warehouse located downtown from Beatrice Associates, a Florida general partnership. Springfield Village loaned Robert L. Stone and Cynthia Stone $305,000.00, which they in turn used to purchase the warehouse. Robert L. Stone thereafter instituted litigation against the tenant, Americold Corporation, for damage to the leasehold. The underlying litigation was settled in 1998 for 3.6 million dollars. Robert L. Stone repaid the Springfield loan, including interest. For reasons still unclear, Robert L. Stone had agreed to "a kicker" that is, that once the Beatrice litigation was settled, he would pay Roger Kinnard and David Kinnard ten percent of the net settlement proceeds. A dispute arose regarding the definition of net settlement proceeds, specifically how the litigation costs were to be measured. Defendant contends the monthly allowance funds were withheld in 1999 and early 2000 an effort to extort a settlement of this Beatrice dispute.[7]

From March 2000 until 2003, the monthly payments continued via Oklahoma Investment Group. In early 2003, Robert L. Stone took control of Redux Office Furniture Company in Chicago, which refurbished office furniture. Robert L. Stone sought funding for Redux from Roger Kinnard. Roger Kinnard asked David Kinnard about the possibility of investing. David Kinnard refused to invest in the company, but offered to accept an assignment of Robert L. Stone's interest in Cinnamon Creek, LLC in exchange for giving Robert L. Stone $100,000. The assignment as executed by Robert L. Stone stated that he "hereby sells, assigns, transfers and conveys to Assignee all of his membership and other ownership interest of any kind in Cinnamon Creek L.L.C., an Oklahoma limited liability

---

[7] No resolution of this issue was achieved prior to the assignments that form the basis of the instant dispute.

company (the "Company"), and all rights appurtenant thereto, including but not limited to the right to receive distributions, profits or income of any kind." Although not commemorated in writing, the loan included a buy-back provision, permitting Robert L. Stone to repurchase his interest in Cinnamon Creek, LLC within six months, with an interest rate of rate of 36%. The funds transferred by David Kinnard were borrowed from Springfield Village, and the amount was reflected by an increase in David Kinnard's account receivable account.[8] Robert L. Stone tendered $130,000.00 to David Kinnard, and Robert L. Stone's ownership interest in Cinnamon Creek, LLC was restored on October 1, 2003. No further problems arose during 2003 between the partners.

In late February 2004, Robert L. Stone approached David Kinnard, seeking to borrow additional money. On March 3, 2004, Robert L. Stone executed an Assignment of Membership Interest identical to that executed in 2003, assigning his membership interest in Cinnamon Creek to David Kinnard. Although not stated in the assignment, the amount agreed upon was $45,000.00. The $45,000 was wired to the bank account of the Children's Fund, at the direction of Robert L. Stone, on March 5, 2004. This value was determined by calculating the capitalized value of Robert L. Stone's interest in Cinnamon Creek, LLC. [9] Although not stated in the assignment, Robert L. Stone had the right to restore his interest

---

[8] The parties utilized the term "account receivable" to indicate both money owed to a partner or member or money owed to an entity by a partner or member. Although traditionally money owed would be considered an account payable, as to the debtor, the entities' accounting reflected any debt owed by a partner or member as a negative account receivable, not an account payable of the partner or member.

[9] The capitalized value of Robert L. Stone's interest was calculated by dividing Cinnamon Creek, LLC's net operating income by a capitalization rate of 10.5%. The cost of debt servicing, i.e. the mortgage, was deducted from this value to determine the net capitalized value of Cinnamon Creek, LLC. The value of Robert L. Stone's interest in Cinnamon Creek, LLC was his pro rata share of the net capitalized value of the entire property.

by tendering payment to David Kinnard of the $45,000, plus interest, the amount of which escalated depending on when the principal was repaid. The buy-back option terminated six months after the assignment, and it was noted in a March 2, 2004 e-mail to Robert L. Stone that "[i]f more than six months have passed without complete payment, David shall retain permanently the Cinnamon share herein discussed." To finance the purchase David Kinnard utilized funds borrowed from Springfield Village, which increased his accounts receivable.[10] Robert L. Stone did not repay the $45,000.00 to David Kinnard. Robert L. Stone apparently conceded in early 2005 that he no longer owned an interest in Cinnamon Creek, LLC, as reflected in the financial statement prepared by Sergey Galant, the Oklahoma Investment Group accountant. Robert L. Stone made suggestions regarding entries on the statement, but did not question the absence of any ownership interest in Cinnamon Creek, LLC.

In June 2004, Robert L. Stone requested additional funds. Via e-mail from Mark Reinitz, it was noted that in exchange for the assignment of his interest in Peppertree Partners, Ltd. and Peppertree Partners, Inc., David Kinnard would pay Robert L. Stone $10,200.00. Combined with other payments previously sent to Robert L. Stone and mortgage payments not received from him for certain Oklahoma Investment Group properties, the total amount of compensation was $43,000.00.[11] On June 10, 2004, Robert L. Stone executed an

---

[10] This same structure was utilized for all of the assignments at issue herein. According to Sergey Galant, the borrowing is reported as debt of partners to the company. As a result David Kinnard's accounts receivable increased. Plaintiff's expert testified that in valuing Robert L. Stone's interest in the entities that he included David Kinnard's debt as an asset of the entities, to which Robert L. Stone was entitled to his proportional share. David Payne also testified that the capital accounts of the partners were in balance.

[11] In a June 9, 2004 e-mail, from Mark Reinitz to Robert L. Stone and others, Mark Reinitz noted "[w]e will wire $10.2K to Rob, which with other payments sent to Rob and not received from him comes to a total of $43K paid for Rob's whole Peppertree ownership share."

assignment of his interest in the Peppertree entities. Again, although not contained in the assignment, the transaction permitted Robert L. Stone to repurchase his shares within six months, with incremental increases in the amount due.[12] Robert L. Stone did not repay any money to David Kinnard. As with the Cinnamon Creek, LLC purchase, the money used by David Kinnard to purchase Robert L. Stone's shares was borrowed from Springfield Village and resulted in an increase in David Kinnard's accounts receivable.

In August 2004, Robert L. Stone requested additional money for purposes of funding his Chicago venture. On August 13, 2004, Robert L. Stone executed an assignment of his interest in Windrock Associates to David Kinnard. In exchange for his assignment, Robert L. Stone received $145,000.00, the capitalized value of his ownership interest, spread over a period of months. Again, although not part of the documentation, Robert L. Stone had the opportunity to repay the amount within six months and to reclaim his ownership interest. Robert L. Stone did not exercise his rights.

In December 2004, Robert L. Stone again requested money from Roger Kinnard. Roger Kinnard contacted his brother, via Mark Reinitz, and David Kinnard agreed to "loan" Robert L. Stone $45,000.00.[13] "Rob says that for this $5K and some previous wire advances, he will assign his share of Summer Pointe to Dave, with the ususal 6 month buy-back option." Plaintiff's Ex. 71. Oklahoma Investment Group transferred $5,000.00 to Robert L. Stone on January 25, 2004. Combined with transfers on December 2, 10, and 30, 2004, the

---

[12] The June 9, 2004, e-mail indicated that "[i]f more than six months have passed without complete payment by Rob, David Kinnard shall retain permanently the Peppertree share herein discussed."

[13] In actuality the transaction called for David Kinnard to loan Robert L. Stone $5,000.00, and for David Kinnard to cover $40,000 of Robert L. Stone's prior advances.

7

total consideration was $45,000.00. The assignment was made by Robert L. Stone effective March 1, 2005. Robert L. Stone did not repay the amount to David Kinnard.

Additionally, on March 1, 2005, Robert L. Stone executed an assignment of his membership and stock ownership in the Springfield Entities, Springfield Holding Company and Springfield Apartments, Inc., to David Kinnard. The same assignment form was utilized and again there was an unwritten six month buy-back provision. In exchange for the assignment, Robert L. Stone received $81,000 in cash, and David Kinnard agreed to cover $360,689.37 of accounts receivable owed by Robert L. Stone to Springfield, and the forgiveness of two promissory notes. One promissory note, related to the Beatrice dispute, was allegedly executed in an attempt to finally resolve the issue of the ten percent due and owing to David and Roger Kinnard. This note required that it be fully paid by September 15, 2005, six months after its execution, in order for Robert L. Stone to regain his shares in the Springfield entities. The second note was designed to address a debt by Robert L. Stone to Bernice Kinnard, Roger and David's mother.[14] According to David Kinnard, in exchange for Robert L. Stone's interest in the Springfield entities, no one would attempt to collect this debt. Additionally, according to Mark Reinitz, David Kinnard was assuming the debt, making him liable for payment to his mother. The cash portion of the transaction was wired

---

[14] The earliest evidence of this transaction is an e-mail from December 2004, whereby Robert L. Stone indicated that he would agree that whatever amount he owed Mrs Kinnard, together with a loan for $20,000 that he was requesting, would be secured by his interest in Springfield Village. Defendants' Ex. 153. Thereafter, on December 30, 2004, Robert L. Stone submitted a proposed agreement to utilize his interest in Springfield Village as security for subsequent money borrowed from Oklahoma Investment Group, money owed to Bernice Kinnard and any award from the arbitration of the Beatrice Dispute. Defendants' Ex. 154. In January it was noted in an e-mail to Robert L. Stone from Mark Reinitz that "[o]ther previous wire advances plus the Beatrice money owed (about $250K) and approximately 500K still owed to Mrs. Kinnard will all go against Rob's share of Springfield, as he has indicated in earlier emails." Plaintiff's Ex. 71.

to the account of The Children's Fund, at Robert L. Stone's request.  Robert L. Stone did not repay any of the amount to David Kinnard.

In April 2005, Cynthia Stone owned a 5.5% interest in the Summer Pointe entities. Robert L. Stone spoke with Mark Reinitz about the possibility of Cynthia Stone assigning her interests to David Kinnard.  On April 7, 2005, Ted Teske advised Cynthia Stone and Robert L. Stone via telephone that the assignment she was being asked to execute was not a loan or security for a loan; it was a sale and an assignment of Cynthia Stone's entire interest in the Summer Pointe Entities.  The call from Ted Teske was in response to a request by Robert L. Stone that he explain to Cynthia that the assignment was in fact merely security for a loan.  Robert L. Stone seemed surprised by Mr. Teske's interpretation of the assignment.  Mr. Teske further explained that Robert L. Stone has previously assigned his entire interest in the entities, and that the buyback period had expired for certain of those properties.  Thereafter, Ted Teske sent an email to Cynthia Stone with an attached assignment.  Per the e-mail, the purchase price was to be $42,000.00.

On April 8, 2005, Cynthia Stone executed and delivered an Assignment of Membership Interest of all of her membership and stock ownership in Summer Pointe Partners, an Oklahoma limited partnership, and Summer Pointe Partners, Inc. to David Kinnard.  On April 8, 2005, Oklahoma Investment Group wired $7,000.00 to the account of Robert Stone at Lakeshore Bank.  On April 11, 2005, the balance of $35,000.00 was wire transferred to the same account.  The wire transfer notation indicated it was the final payment for the assignment of interest in Summer Pointe from Cynthia Stone to David Kinnard.

Neither Cynthia Stone nor Robert L. Stone ever paid any money to David Kinnard to redeem their ownership interest.

In May 2005, Roger Kinnard informed the Defendants that no additional money would be forthcoming from the Oklahoma Investment Group account, because Defendants no longer maintained an ownership interest.

As noted above, at some point in time Robert L. Stone borrowed money from Bernice Kinnard. This debt was apparently never repaid, the amount owed is disputed, and Mark Reinitz testified that as part of the compensation paid to Robert L. Stone for his interest in Springfield Village, David Kinnard assumed the debt. As with many of the transactions involved in this action, the original debt apparently was not commemorated in writing. Although Robert L. Stone disputes the existence of the debt, there is a promissory note signed by Robert L. Stone indicating a debt to Bernice Kinnard totaling $500,000.00. Defendants' Ex. 400. In February 2004, Robert L. Stone sent an e-mail to Roger Kinnard acknowledging a debt, but noting the disputed amount. Defendants' Ex. 123. On December 10, 2004, Robert L. Stone acknowledged the debt as well. Defendants' Ex. 153. On January 25, 2005, Mark Reinitz estimated to Robert L. Stone that he owed approximately $500,000 to Mrs. Kinnard. Defendants' Ex. 165. Robert L. Stone acknowledged, and did not dispute this estimate, in an e-mail to David Kinnard, Roger Kinnard and Mark Reinitz. Plaintiff's Ex. 70. This debt was transferred to David Kinnard by virtue of the March 2005 transaction regarding Springfield Village.

As a result of the parties' inability to agree on whether the Stones own any interest in any of the entities, Plaintiffs filed this action. David Kinnard seeks a declaratory judgment

that the assignments set forth above were valid and legally binding such that none of the defendants have any right, title or interest in any of the entities.  Plaintiff David Kinnard requests an order restraining Defendants from ever claiming, for any purpose, an ownership interest or financial interest in any of the entities.  Defendants filed counterclaims seeking a full accounting for each of the entities and a declaratory judgment that they have ownership rights in the entities.

Because the assignments are the foundation of the action, the Court will first consider the legality and effect of the Stone's various assignments.  Robert L. Stone contends that certain of the assignments were prohibited by the terms of the partnership agreements or the operating agreements of the particular entity.

According to the Cinnamon Creek, LLC operating agreement, any assignment of a member's interest required the consent of each member, via written and dated instrument.  Additionally, it required that each member file the necessary documents for a transferee to become a substitute member and that the company receive an opinion of counsel that the transfer would not materially adversely affect the company's classification for tax purposes.  The Court notes that in 2003,without considering any of these issues, Robert L. Stone assigned his interest in Cinnamon Creek, LLC to David Kinnard.  Additionally, when the money was repaid in late 2003, Robert L. Stone's interest was restored, an assignment in and of itself.  When Robert L. Stone assigned his interest a second time in 2004, again without concern for the provisions of the Cinnamon Creek, LLC operating agreement, the Court concludes that he waived the requirements.  Additionally, Robert L. Stone clearly agreed to the assignment of his interest by virtue of his signature on the assignment.  Additionally, the

e-mail messages between Mark Reinitz, David Kinnard and Roger Kinnard are sufficient to fulfill the written consent requirement. Obviously David Kinnard consented, and Roger Kinnard's consent is found within these e-mails. Furthermore, because David Kinnard was already a member, there was no issue regarding substitution of a member, and Mark Lovelace of Phillips McFall had previously consulted with Plaintiff's on the 2003 sale of Cinnamon Creek, LLC. Accordingly, the Court concludes that provision in the Cinnamon Creek, LLC operating agreement were waived by Robert L. Stone, and alternatively, that the conditions were fulfilled.[15]

The partnership agreement for Peppertree Partner, Ltd., permits the transfer of a partner's interest with the approval of the general partner. The limited partner seeking to transfer his interest must request permission in writing and pay a non-refundable fee of four hundred dollars, and counsel must be consulted regarding the effect of such transfer on the partnership.[16] Clearly the condition of consent was met, because David Kinnard, on behalf

---

[15] The Cinnamon Creek, LLC Operating Agreement provides, in part:
No failure by any party to insist upon the strict performance of any covenant, duty, agreement or condition of this Agreement or to exercise any right or remedy consequent upon a breach thereof shall constitute waiver of any such breach or any other covenant, duty, agreement or condition.

Defendant Robert L. Stone cannot rely on this provision when his actions were the actions taken in violation of the terms of the Operating Agreement related to transfer of interest.

[16] The partnership agreement provides:
The limited partner seeking to transfer his interest must first apply in writing to both the general partners at their addresses on the books of the Partnership and pay a non-refundable fee of four hundred dollars ($400.00) to the resident agent of this Partnership in this state at the address listed above, to cover the costs and expenses of preparing, executing, and filing a certificate of Amendment with the office of the Secretary of state of Oklahoma;

(b) Upon receiving such notice, the general partners shall present copies of said notice to counsel for the Partnership;

(c) If in the opinion of such counsel, the proposed transfer of such partnership interest may be effected without registration thereof under the Act, as then in force, or any similar statute then in force, and

(continued...)

of the corporate general partner, gave his consent.   Additionally, Mark Lovelace was consulted regarding the proposed transfer, and  apparently concluded that the transfer to David Kinnard would not impact Peppertree's status.  Accordingly, Defendants' contention that Plaintiffs failed to comply with these requirements is without merit.

With regard to Summer Pointe Partners, a limited partnership, Defendants allege that its bylaws provide that a transfer of shares to any present shareholder is valid only upon unanimous approval of all other living shareholders.   The bylaws, however, were not introduced into evidence at trial, and the certificate of limited partnership contains no such requirement.  Furthermore, Mark Reinitz testified that with regard to the transfer of Robert L. Stone's interest in Summer Pointe, that he questioned the other partners, Roger Kinnard, David Kinnard, Samuel Brown, and Margaret McLaughlin, and none had any objection to the transfer.   Accordingly, this provision if it exists did not preclude the transfer of Defendants' interests in Summer Pointe.

Defendants alternatively seek to avoid the effect of the assignments by arguing, with regard to each particular assignment, that they received no consideration for the transfer of their interests.  Additionally, Defendants argue that because the fund transfers came from the Oklahoma Investment Group account, that they did not receive consideration from David

---

[16](...continued)
applicable state securities law, the general partners shall promptly there after so notify the holder of such partnership interest. Then the general partners shall decide in writing whether, in their sole discretion, they will permit said transfer.  A unanimous vote is required to approve the transfer and to admit the transferee to the Partnership as a new limited partner. Approval must also be in accordance with the terms of the notice delivered by the transferor to the general partners, in accordance with this certificate, and upon such further terms and conditions as shall be required by counsel for the Partnership in order to assure compliance with the Act and applicable securities laws."

Defendants' Ex. 302.

Kinnard, the purported purchaser of their interests.  Additionally, Defendants contend that as a result of the guaranteed monthly allowance, and Oklahoma Investment Group's failure to consistently send the requisite payments, that Oklahoma Investment was indebted to the Stones, and that any alleged advances, should have been set off by the debt owed to them. The Court disagrees.

Robert L. Stone contends that the promise of a monthly allowance created an account payable, in his favor, for any month the promised amount was not received.  Plaintiff's expert, one of the few credible witnesses in the case, testified that he had completed a full accounting of the entities, utilizing accepted methods of forensic accounting.[17]  He testified that payments made to partners or to members of a limited liability corporation can take one of three forms: (1) guaranteed payments, generally a salary to a partner for work expended, which are deducted by the entity as an expense; (2) distributions of operating income, that is a partner's pro rata share of net operating income less the debt service; and (3) loans. Loans are essentially any moneys paid to a partner or member in excess of his or her distributive share.  At no time were the monthly payments to Robert L. Stone treated as guaranteed payments, deducted as an expense by the entities and reported to the Internal Revenue Service as guaranteed payments made to him.  The Court concludes that the "monthly allowance" had the potential to create debt from Robert L. Stone to the Oklahoma Investment Group member entities, to the extent the amounts exceeded his distributive share.

---

[17] Defendants contend that no "full accounting" was completed, because Mr. Payne did not have access to the general ledgers from the inception of the entities.  Mr. Payne testified that it is not unusual that business entities do not retain all of their general ledgers.  He testified that by virtue of the tax returns for the entities that he was able to determine historically what distributions had been made to the members and the partners.  There is no evidence that the entities tax returns did not accurately state the payments made to the partners as distributions.

However, the failure to make one or more payments did not create debt in favor of Robert L. Stone against Oklahoma Investment Group or any entity or individual. Any money paid monthly, or otherwise, to Robert L. Stone was either a distribution or a loan. Distributions in excess of his distributive share created a liability in favor of the entities.[18]

Mr. Payne testified that the capital accounts of each partner were essentially in balance, that is, that the distributions of capital to David Kinnard, Roger Kinnard, and Robert L. Stone, were proportionate to their ownership interests. The partners loan accounts, however, were not in balance. Roger Kinnard had the largest accounts receivable, followed by Robert L. Stone and then David Kinnard. As noted above, David Kinnard's accounts receivable grew substantially in 2004 and 2005, as he leveraged his interest in order to acquire Robert L. Stone's share. Defendants contend that this was improper for a multitude of reasons, including the fact that the money was all on the books of Springfield Village, and its operating agreement prohibited loans to the members.[19]

---

[18] The Court is unable to accept the testimony of Defendants' expert because it is based on a faulty premise: that the monthly allowance was a guaranteed payment and that the failure by Oklahoma Investment Group to make a monthly payment resulted in a liability on its part and an asset on the part of Robert L. Stone. Such was not the case. As indicated in an e-mail dated March 22, 2002, from Jeremy White, then-Oklahoma Investment Group accountant, to Robert L. Stone, the payments to Robert L. Stone were distributions "instead of compensation" because "the payments to you are your share of net income from the partnerships you own. It is not compensation that we are paying to you since the partnerships do not get to count it as an expense." Defendants' Ex. 16. The accountant refused to consider the payments as guaranteed payments and the K-1s issued by the entities rarely reported distributions to their partners or members. As a result, Robert L. Stone should have realized that the hundreds of thousands of dollars that he was receiving annually would have to be balanced against his distributive share. Indeed, in early 2005, when preparing his financial statement in conjunction with Sergey Gallant, Robert L. Stone did not question the fact that his account receivable, that is his debt to Oklahoma Investment Group, was nearly one million dollars. Defendants' Ex. 174, 177.

[19] The accounting methodology for the entities involved transferring all accounts receivable to the books of Springfield Village. Plaintiff's expert testified that Springfield Village is by far the most profitable of the entities, and that it was in the best financial position to advance moneys, and thus the transfer of the debt was not impermissible or unusual.

The Springfield Village Operating Agreement provides in Article 4, Section 4.3, that "[t]he Company shall not make any loans to any member or any Affiliate of any member without the written consent of all members holding as least three fourths (3/4) of the outstanding Units of the Company." Defendants' Ex.329. Defendants contend that Plaintiffs did not have the required written consent. The Court concludes that by his consent Robert L. Stone waived this requirement.

In *Atlas Life Ins. Co. v. Schrimsher*, 179 Okl. 643, 66 P.2d 945 (948) (1937), the Oklahoma Supreme Court said:

> Although the definitions of waiver are myriad and conflicting, it may be said with certainty that in order to constitute a waiver, there must be an actual intention to relinquish a known right, either expressly, or by such conduct as warrants an inference of such relinquishment ... The most rudimentary essential of a waiver is that the waiving party shall in some manner publish his intention to relinquish his rights, either by words or conduct. As stated in 67 Corpus Juris, 294, 'waiver' 'is a doctrine, resting upon an equitable principle, which courts of law will recognize, that a person with full knowledge of the facts shall not be permitted to act in a manner inconsistent with his former position or conduct to the injury of another.'

In 1997, Robert L. Stone and Cynthia Stone borrowed $305,000.00 from Springfield Village Apartments, Ltd, an Oklahoma limited liability company, to procure the Beatrice Warehouse. Plaintiff's Ex. 361. There is no evidence of written consent by David Kinnard and Roger Kinnard to the loan for that transaction. Additionally, On June 3, 2004, and June 14, 2004, Defendant Robert L. Stone requested advances on his partnership distributions, which would likely include money from the Springfield Village apartment. The Court finds that Robert L. Stone, David Kinnard and Roger Kinnard acted with equally unclean hands, thereby waiving the written permission requirement with regard to loans from Springfield

Village.  As such, Robert L. Stone cannot complain at this juncture that the borrowing of money from Springfield Village Apartments, Ltd. by any of the partners was improper under the terms of the operating agreement.

Defendants further contend that they received no consideration and additionally that even if they received consideration, it did not come from David Kinnard, and thus their interests were not transferred to him.  The Court need not reiterate the litany of payments made to Robert L. Stone during 2004 and 2005.  With regard to each of the entities, there is evidence of adequate consideration having been exchanged.  David Payne testified that Robert L. Stone and Cynthia Stone received reasonable consideration for their interests in the subject entities.  The funds sent to Robert L. Stone from the Oklahoma Investment Group account for the transfer of his interest in each entity created a debt to Springfield Village payable by David Kinnard.  The Court accepts Mr. Payne's testimony.

> If Mr. Kinnard paid Mr. Stone direct, Mr. Kinnard, being a controlling member, would have the ability after he paid Mr. Stone direct to advance money back to himself or withdraw money from the partnership and be in the same economic position that he is as if he could pay direct and then withdraw or he could just withdraw the funds out of the partnership through Oklahoma Investment Group and pay it and then burden his interest and both Mr. Stone and Mr. Kinnard would be in the same economic positions regardless of the form of the transaction.

Tr. Vol. II, p. 474.  Mr. Payne further testified that Robert L. Stone received cash from the entities in excess of his distributive share and, with regard to the sale of his interest in Springfield Village, that David Kinnard assumed responsibility for Robert L. Stone's accounts receivable.  Additionally, Robert L. Stone received consideration by David Kinnard's assumption of the obligation on the Beatrice Kinnard note.  Additionally, Robert

L. Stone does not dispute the existence of a "kicker" on the Beatrice deal, nor does he dispute that he did not fulfill his obligation, and that his obligation to David Kinnard and Roger Kinnard has been extinguished by virtue of the Springfield Village assignment. The Court concludes that considered both singly and collectively, Robert L. Stone and Cynthia Stone received reasonable consideration for their interests, and thus are not entitled to rescission or other remedy on this basis.

Finally, the issue remains whether the assignments were sales or loans. Although the Plaintiffs at various times used both terms to describe the arrangements, and although Robert L. Stone testified that he believes he merely utilized his interests as collateral for loans with unlimited time for repayment, the Court concludes that the assignments were sales with the right to redeem, which right was not exercised within the time prescribed nor in fact, ever. The 2003 Cinnamon Creek, LLC assignment is instructive in this case, and should have been a harbinger to Robert L. Stone of how subsequent transactions would be treated.

Robert L. Stone knew as early as March of 2003, that David Kinnard and Roger Kinnard were hesitant to loan him money. Defendants' Ex. 4. Mark Lovelace, counsel for Oklahoma Investment Group, sent an e-mail on March 26, 2003, to Mark Reinitz outlining the possibility of a sale versus a loan. That e-mail was forwarded by Mark Reinitz to Robert L. Stone on March 27, 2003, at 10:27 a.m.. At 2:10 p.m. on that same day, Robert L. Stone, in apparent recognition that his desire for a loan would not come to fruition, sent a form for the unconditional transfer of partnership interest to Mark Reinitz. That same date, an e-mail from Mark Lovelace to all of the major players indicated that Robert L. Stone should sign and have the agreement notarized, so that "funding of the agreed $100,000 sale price can

occur tomorrow." Defendants' Ex. 48. Mark Lovelace noted, "I understand that we are also preparing an Option Agreement for Robert to be able to repurchase his membership interest." Defendants' Ex. 48.

Later, Robert L. Stone asked Mark Reinitz why it was important to describe the transaction as a "sale-redemption" and not as a loan. Defendants' Ex. 84. Thus, Robert L. Stone was aware that the Plaintiffs believed he had sold his interest, not merely utilized his interest as security. David Kinnard further informed Robert L. Stone that "[t]here is no loan. There is only an opportunity to buy back shares. Please read these docs carefully." Defendants' Ex. 86. Despite this clear and unequivocal statement, Robert L. Stone later inquired of Jeremy White, "[w]hat is the amount necessary to pay off my non-loan from Oklahoma Investment Group, and when is it due?" Defendants' Ex. 87. Robert L. Stone later referenced his "loan-like arrangement." Defendants' Ex. 89. Despite this history and Plaintiff's obvious intentions, Robert L. Stone subsequently utilized the same unconditional transfer on Cinnamon Creek, LLC, Windrock Associates, Peppertree, Summer Pointe, and Springfield Village. Robert L. Stone did not dispute the absence of Cinnamon Creek, LLC and Peppertree Partners as assets in his personal financial statement prepared by Sergey Galant in early 2005.[20] With regard to the each of entities Robert L. Stone was unable or failed to exercise his option to re-purchase his shares. Additionally, Cynthia Stone was fully aware that the assignment was a sale and not security for a loan. Despite this knowledge, she

---

[20] The Court finds it curious that Windrock Associates remained on the list of assets owned by Robert L. Stone in December 2004, despite its earlier transfer. However, it appears that the lender on the property, for whom the financial statement was being prepared, had not yet okayed the transaction. Thus it appears that Robert L. Stone's interest, although previously transferred, was not excluded from his list of assets perhaps in an effort to avoid violating terms of the mortgage established by the lender. Defendants' Ex. 172.

executed the assignment and accepted a transfer of funds.  Accordingly, the Court concludes that upon the expiration of the six-month option to repurchase, David Kinnard became the owner of the Defendant Robert L. Stone's and Cynthia Stone's interest in the subject entities. Defendants are not entitled to claim any interest in the properties.

### Dr. Stone's Loan

Additionally, there is an issue between Springfield Holding Company and Dr. Robert L. Stone, Sr.  The parties are unable to agree on the amount of the loan or whether it was repaid.  As a result, Plaintiff Springfield Holding Company seeks a declaratory judgment against Dr. Stone that it owes nothing on a loan he made to the company in the early 1990's, having repaid in full all principal and accrued interest and an injunction barring Dr. Stone from claiming any amount due from Springfield, David Kinnard or Roger L. Kinnard.  Dr. Robert L. Stone seeks to recover on a theory of breach of contract, asserting that David Kinnard and Roger Kinnard are indebted to him on the $450,000.00, loan of which only $160,000.00 has been repaid.

In 1992, the notes payable ledger of Springfield Village Apartments, the predecessor in interest of Springfield Holding Company, Ltd., indicated a debt to Dr. Stone totaling $164.269.80.  In June 1993, Dr. Stone received a $10,000.00 payment toward the principal. From 2000-2004, Robert L. Stone's distribution account was credited with $771.35 per month in interest.  On September 19, 2005, Robert L. Stone was informed that the outstanding debt to Dr. Stone would be repaid before December 2005.  In fact, $163,526.20 was paid to Dr. Stone's bank account during that time.  Despite Defendants' testimony, there is no other evidence of a $450,000.00 debt from any Springfield entity to Dr. Stone.  The

memorandum of agreement presented as Defendants' Exhibit 1 does not support the proposition that a $450,000.00 promissory note was ever made.  Accordingly, no money is due and owing to Dr. Stone by any Plaintiff in this action or by any of the Oklahoma Investment Group entities by virtue of this agreement.[21]   Accordingly, Dr. Stone is not entitled to judgment against the Plaintiffs in this action.

---

[21] The Court finds that Mr. Reda had the authority of the trustee from the bankruptcy court in the Northern District of Illinois to represent Dr. Stone in this action.

**<u>CONCLUSION</u>**

In accordance with the above findings, the Court concludes as follows:

(1) As of March 5, 2004, Robert L. Stone owned no interest in Cinnamon Creek;

(2) As of June 10, 2004, Robert L. Stone owned no interest in Peppertree Partners;

(3) As of November 16, 2004, Robert L. Stone owned no interest in Windrock Associates;

(4) As of April 7, 2005, Robert L. Stone owned no interest in Springfield Village Apartments;

(5) As of March 1, 2005 Robert L. Stone owned no interest in Summer Pointe;

(6) As of April 11, 2005, Cynthia Stone owned no interest in Summer Pointe;

(7) The Stones received reasonable consideration for their interests in the above-listed entities, as agreed upon by the parties;

(8) David Kinnard, the purchaser, provided reasonable consideration for the Stones' various interests;

(9) All of the parties ignored the requirement of Springfield Village that written consent of a majority of the members be obtained before loans could be made, thus this requirement was waived;

(10) Robert L. Stone, during his time as an owner of the various Oklahoma Investment Group entities, received money in excess of his distributive share of the income of the entities;

(11) Although David Kinnard promised to pay Robert L. Stone a minimum amount monthly, the failure to pay amounts in 1999 and 2000 did not create a debt from Oklahoma Investment Group or any of its entities; these amounts, to the extent they exceeded the Stone's distributive shares, were advances, creating accounts receivable in favor of the entities, as consolidated in favor of Springfield Village;

(12) David Payne performed a full accounting of the entities, utilizing accepted principles of forensic accounting, his results are not undermined by the absence of general ledgers for the period prior to 2000, and thus Defendants are not entitled to a further accounting;

(13) Any debt by David Kinnard, Roger Kinnard or Springfield Holding to Dr. Robert L. Stone has been fully repaid.

For the reasons set forth herein, judgment shall be entered in favor of the Plaintiffs and against Defendants.

**IT IS SO ORDERED** this 25th day of August 2008.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE